789 F.2d 986
 Abdul BEYAH, K. McDonald, H. Benitez, A. Robles, D. Boswell,
K. Dukes, K. Richardson, M. Payne, J. Duffy, S.
Dukes, and V. Baez, Plaintiffs,
Abdul Beyah, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, Commissioner of DOCS; Harold J. Smith,
Superintendent, Attica Correctional Facility; and
J. Cochrane, Attica Correctional
Facility, Defendants-Appellees.
 No. 782, Docket 84-2371.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 20, 1986.
Decided May 2, 1986.
 
 Mitchell A. Lowenthal, New York City (Jonathan I. Blackman, Cleary, Gottlieb, Steen & Hamilton, New York, New York, on the brief), for plaintiff-appellant.
 Martin A. Hotvet, Asst. Atty. Gen. of State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen., Robert Hermann, Sol. Gen., William J. Kogan, Asst. Sol. Gen. of State of N.Y., Albany, N.Y., on the brief), for defendants-appellees.
 Before OAKES, KEARSE, and PRATT, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Abdul Beyah, a New York State prisoner whose religion requires his abstention from contact with pork or pork products, appeals from a judgment of the United States District Court for the Western District of New York, John T. Curtin, Chief Judge, dismissing his complaint, brought under 42 U.S.C. Sec. 1983 (1982), alleging that the refusal of the defendant prison officials to allow him to use soap containing no pork products violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. The district court granted defendants' motion for summary judgment dismissing the complaint on the ground that the soap currently provided to inmates did not contain pork products. On appeal, Beyah contends that the court improperly granted summary judgment on the basis of the affidavit of defendants' attorney, who lacked personal knowledge of the facts alleged, and unsworn letters from third parties, and that the court ignored a genuine issue of material fact demonstrated by the affirmation of another inmate who was one of the original plaintiffs in the action. Defendants seek affirmance of the judgment principally on the ground that, since Beyah is no longer incarcerated at the correctional facility where the alleged constitutional violations occurred, the action is moot. Finding insufficient merit in defendants' claim of mootness, and finding that the district court improperly granted summary judgment, we vacate the judgment dismissing the complaint and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 Beyah and several other inmates of New York State's (the "State") Attica Correctional Facility ("Attica"), who were from time to time housed in Attica's Special Housing Unit ("SHU"), commenced this action in April 1983 under 42 U.S.C. Sec. 1983 against defendants Thomas A. Coughlin, Commissioner of the State's Department of Correctional Services, Harold J. Smith, Superintendent of Attica, and J. Cochrane, Deputy Superintendent of Attica. In their complaint and in various pretrial affidavits, plaintiffs alleged that they were practitioners of religions that require abstention from contact with pork products, and that during their incarceration in SHU in the 1982-1983 period, defendants confiscated plaintiffs' personal soap "without reason or cause," in violation of their Fourth, Fifth, and Fourteenth Amendment rights, and allowed plaintiffs to use only soap made with pork products, depriving them of their First Amendment right to the free exercise of their religious beliefs. Plaintiffs also contended that their inability to use the soap provided by defendants effectively denied them adequate hygiene and health care, thereby subjecting them to cruel and unusual punishment in violation of the Eighth Amendment. The complaint demanded declaratory and injunctive relief and compensatory and punitive damages. Defendants admitted that inmates in SHU are not permitted to use other than State-issued soap, but denied that pork-based soap was issued.
 
 
 3
 Plaintiffs asserted that the allegedly pork-based soap provided them had been manufactured by the State at its Great Meadow Correctional Facility ("Great Meadow"), and they served on defendants interrogatories and requests for admissions seeking confirmation of those facts. Responding in January 1984, Cochrane stated that in 1982, "State soap and soap provided by an outside source were provided to SHU inmates," and that "[f]rom May 1982 until now we have purchased soap for SHU inmates from a commercial supplier." Thus it was conceded that prior to May 1982, defendants had provided plaintiffs only with soap manufactured by the State, and it is clear from various submissions of the defendants that the State-made soap was manufactured at Great Meadow. Defendants disclaimed personal knowledge, however, of the content of the soaps provided to plaintiffs. In his November 1983 answers to plaintiffs' interrogatories, Cochrane stated that he had "no knowledge that soap made at Great Meadow Correctional Facility for department use is made with swine by-products." He added that information had been requested from the commercial suppliers as to the contents of their soaps.
 
 
 4
 In February 1984, defendants moved for summary judgment dismissing the complaint on the ground that there were "no genuine issues of material fact with respect to the composition of the soap presently issued to inmates in [SHU] or previously issued to inmates in [SHU] prior to May of 1982." In support of their motion, defendants relied on Cochrane's answers to plaintiffs' discovery requests and submitted the affidavit of their attorney, Assistant Attorney General Douglas S. Cream, which attached, inter alia, letters from the State's current commercial suppliers of soap, stating that there were no pork products in their soaps. Cream's affidavit stated that prior to May 1982, soap manufactured at Great Meadow had been provided to SHU inmates and that the soap manufactured at Great Meadow "does not contain pork fat or pork derivatives." In support of this statement, the affidavit attached a December 1983 letter from a quality control analyst employed by the State, stating that "to the best of [his] knowledge," the soap products manufactured by the State Department of Correctional Services "do not contain pork fats or pork fat derivatives."
 
 
 5
 In opposition to defendants' motion, plaintiff Milton Payne filed an affirmation in which he stated, inter alia, that
 
 
 6
 plaintiff Milton Payne, as well as other prisoners ... were once held at Great Meadow Corr. Fac. ... where all N.Y.S. Dept. of Corr. Services "State" soap is manufactured has seen or been to Soap-Factor [sic] at that facility to view the barrels of swine (pig) produces [sic] that are used in making that soap.
 
 
 7
 In light of Payne's affirmation, defendants requested that the court hold their summary judgment motion in abeyance until Payne's deposition could be taken.
 
 
 8
 The district court declined to postpone its decision on the summary judgment motion, concluding that the taking of Payne's deposition was unnecessary in light of all the circumstances. The court stated that "[t]here is no evidence whatever that the soap now provided contains any pork products." Decision and Order dated October 24, 1984, at 2. Without reaching the question of whether the denial to plaintiffs of pork-free soap, if proven, would violate their constitutional rights, the court granted summary judgment on the basis of the materials submitted by defendants stating that the soaps provided by current suppliers contained no pork products:
 
 
 9
 According to the affidavits supplied, neither "Cashmere Bouquet," which is manufactured by the Colgate Palmolive Company, nor "Sweetheart" soap, which is manufactured by Purex, contains pork fats or pork derivatives. Beyond plaintiffs' suspicion that this is so, there is no information in the file to support plaintiffs' contention.
 
 
 10
 Id. The complaint was dismissed, and this appeal by Beyah followed.
 
 II. DISCUSSION
 
 11
 On appeal, Beyah contends that the granting of summary judgment was error principally because the court (1) relied on inadmissible hearsay and unsworn statements, and (2) disregarded Payne's affirmation which showed that a material fact was in dispute. Defendants seek to sustain the judgment on the ground that the action is moot, principally because Beyah is no longer incarcerated at Attica, where the alleged constitutional deprivations occurred. Finding insufficient merit in the claim of mootness, and finding that the district court erred in granting defendants summary judgment, we vacate the judgment and remand for further proceedings.
 
 A. Mootness
 
 12
 Defendants' mootness contentions need not detain us long. Defendants argue, first, that since plaintiffs' complaint attributed the allegedly unconstitutional practice only to officials at Attica, the fact that Beyah is no longer incarcerated at Attica renders the action moot as to Beyah. Although this fact may well moot Beyah's claims for declaratory and injunctive relief, see Preiser v. Newkirk, 422 U.S. 395, 401-02, 95 S.Ct. 2330, 2334-35, 45 L.Ed.2d 272 (1975) (an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed); Steffel v. Thompson, 415 U.S. 452, 459-60, 94 S.Ct. 1209, 1215-16, 39 L.Ed.2d 505 (1974); Geraci v. Treuchtlinger, 487 F.2d 590, 592 (2d Cir.1973) (per curiam), the complaint also sought compensatory and punitive damages for the period in which the alleged deprivation occurred. These requests were not mooted by Beyah's transfer from Attica.
 
 
 13
 Nor are we impressed by defendants' suggestion, relying on pre-1978 authorities, that Beyah's claims are moot because he would not be able to establish actual damages. Even if defendants' factual premise were accurate, Beyah's claim for damages would not be moot since it is now well established that if he can prove that he was deprived of a constitutionally protected right, and if defendants are not able to establish a defense to that claim, Beyah will be entitled to recover at least nominal damages. See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).
 
 B. The Granting of Summary Judgment
 
 14
 We have several difficulties with the district court's granting of summary judgment dismissing the complaint: The court did not enforce the requirements of Fed.R.Civ.P. 56(e) as to the manner in which motions for summary judgment are to be supported; it appears to have misallocated the burden with respect to the establishment of the absence or existence of a genuine issue of material fact; it may well have drawn inferences in favor of the moving, instead of the nonmoving, party; and it appears to have ignored the temporal scope of plaintiffs' claim and the nature of the relief requested.
 
 
 15
 Fed.R.Civ.P. 56(c) allows summary judgment to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This requirement means that "[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) ] affidavit." 6 Moore's Federal Practice p 56.22, at 56-1312 to 56-1316 (2d ed. 1985) (footnote omitted); see, e.g., Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 105 n. 11 (2d Cir.1981). Rule 56(e) states that if a summary judgment motion "is made and supported as provided in this rule," the nonmoving party may not rest upon his pleading but must show the existence of a genuine issue to be tried by setting forth facts in "affidavits or as otherwise provided in this rule." Fed.R.Civ.P. 56(e) (emphasis added).
 
 
 16
 The party seeking summary judgment bears the burden of establishing that no genuine dispute as to a material fact exists, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the evidence proffered and the inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion, id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). " 'Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' " Adickes v. S.H. Kress & Co., 398 U.S. at 160, 90 S.Ct. at 1609-10 (quoting Advisory Committee Note on 1963 Amendment to subdivision (e) of Rule 56) (emphasis in opinion).
 
 
 17
 The first flaw in the granting of summary judgment to defendants in the present case was the court's reliance on the materials submitted by defendants as having established the contents of the soaps provided to plaintiffs. The only affidavit submitted was that of Cream, defendants' attorney. Cream, however, did not suggest that he had personal knowledge of any of the facts he asserted. The letters attached to the Cream affidavit, although signed by persons who may have had personal knowledge of the matters asserted therein, were not sworn to as is required by Rule 56(e). The answers of Cochrane to plaintiffs' interrogatories and requests for admissions, though sworn to, did not purport to state, on the basis of Cochrane's personal knowledge, the contents of the soaps provided. In short, insofar as the contents of the soaps were concerned, defendants proffered no statements sworn to by anyone who had knowledge of the facts asserted. Their factual presentation thus did not carry their burden under Rule 56(e) of establishing that there was no genuine issue as to the contents of the soaps provided to plaintiffs. Given the shortcomings of defendants' motion, plaintiffs had no burden to come forward with affidavits of their own to show that there was an issue for trial.
 
 
 18
 In addition to suffering these procedural defects, defendants' factual presentation was substantively inadequate to warrant the summary dismissal of plaintiffs' entire claim. Although the submission of affidavits from the commercial suppliers setting forth the information they provided might have sufficed to shift to plaintiffs the burden of setting forth in affidavit or other sworn form facts sufficient to show the existence of a genuine issue as to the contents of the soaps provided plaintiffs after May 1982, the same cannot be said with respect to the State-made soap from Great Meadow provided them prior to May 1982. The December 1983 letter submitted by defendants with respect to whether pork products were used in the Great Meadow soap spoke only in the present tense. Even had these statements been made under oath, it would have been improper for the court to grant summary judgment on the basis of an inference, unfavorable to plaintiffs, the nonmoving parties, that the manufacturing process there described had also been in existence during the pre-May 1982 period.
 
 
 19
 Finally, it appears that in dismissing the complaint, the court was unaware of that part of plaintiffs' claim that sought damages for the alleged deprivation of their rights during their entire period of incarceration at Attica in the years 1982-1983. The court ignored the fact, evidenced by defendants' admissions, that prior to May 1982, the State had provided SHU inmates with soap manufactured by the State at Great Meadow, not with soap purchased from commercial suppliers. The court's observation that there was "no information in the file to support plaintiffs' contention" that the soap provided them contained pork was stated with reference to, and was applicable only to, the soaps provided by the commercial suppliers. As to the pre-May 1982, State-made soap, Payne's affirmation stated that while he was incarcerated at Great Meadow he had seen vats of swine fat being used in the manufacture of soap. The court's disregard of Payne's affirmation and its rejection of defendants' request for a delay in the decision of their summary judgment motion to permit them to depose Payne, opining that a Payne deposition was "unnecessary in view of all the circumstances [because] [t]here is no evidence whatever that the soap now provided contains any pork products" (emphasis added), suggests that the court simply failed to focus on plaintiffs' claims for damages with respect to the pre-May 1982 soap manufactured by the State.
 
 
 20
 In sum, the form of defendants' presentation with respect to the commercially manufactured soaps did not comply with Rule 56(e) and hence did not permit the entry of summary judgment dismissing the part of plaintiffs' claim which dealt with soaps supplied to them after May 1982. Flaws in both the form and the substance of defendants' presentation with respect to the soap manufactured by the State at Great Meadow should have prevented entry of summary judgment against plaintiffs with respect to so much of their claim as dealt with the soap provided them prior to May 1982.
 
 CONCLUSION
 
 21
 The judgment dismissing the complaint is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.