**Joseph SCOTT, Plaintiff,**

v.

**Thomas A. COUGHLIN, Ronald Miles, Kemberly Burgett, Katherine Winston, D.J. Ryan, and Louis Kordyl, Defendants.**

**No. CIV–89–217T.**

United States District Court, W.D. New York.

Jan. 5, 1990.

Joseph Scott, Fallsburg, N.Y., pro se.

New York State Atty. Gen's. Office, (Elizabeth J. McDonald, Asst. Atty. Gen., of counsel, Rochester, N.Y., for defendants.

DECISION AND ORDER

TELESCA, Chief Judge.

Pursuant to 42 U.S.C. § 1983, *pro se* plaintiff Joseph Scott originally brought

this action for declaratory, injunctive and compensatory relief, alleging that the defendants improperly confined him to "detention admission" and "keeplock" in violation of his right to due process. By Decision and Order of March 8, 1989, I dismissed plaintiff's complaint without prejudice pursuant to 28 U.S.C. § 1915(d). The plaintiff subsequently filed an amended complaint in which he alleges, in substantial part, that he was unconstitutionally imprisoned in "keeplock" for a total of 14 days. Plaintiff now moves for summary judgment on the issue of his improper confinement. For the reasons discussed below, the plaintiff's summary judgment motion is granted on the issue of liability. The parties are directed to submit proof on the question of damages.

Plaintiff Joseph Scott has, at all .times relevant to this action, been an inmate in the New York State correctional system. Prior to his transfer to the Southport Correctional Facility ("Southport") where he is currently incarcerated, plaintiff was an inmate at the Elmira Correctional Facility ("Elmira"). Although the plaintiff has filed two complaints in this action, he similarly alleges in each that he was improperly confined at Elmira for eight (8) days and later for six (6) days soon after his transfer to Southport.

In his original complaint, plaintiff alleged that the defendants had subjected him to " 'false imprisonment' premised upon the wrongful (detention admission) to (keeplock) confinement ... without the 'issuance' of a misbehavior report and without a hearing." Under New York State law, the terms "detention admission" and "keeplock" refer to two different types of administrative segregation. Each is governed by differing sets of procedural criteria and thus necessarily implicates different due process concerns. New York regulations require prison authorities to confine inmates to "keeplock" when there are "reasonable grounds to believe that ... [they] represent[ ] an immediate threat to the safety, security or order of the facility or

... [an] immediate danger to other persons or property." 7 N.Y.C.R.R. § 251–1.6(a). While the mandatory nature of this language creates a liberty interest in remaining free from confinement in keeplock, *see Gittens v. LeFevre, et al,* 891 F.2d 38, 40 (2d Cir.1989), it is far from clear whether the provisions governing detention admission similarly implicate an inmate's due process rights.[1] These provisions accord prison officials discretionary authority to impose detention admission "(1) in the case of inmates who are awaiting initial appearance before or determination of a disciplinary hearing ...; *or (2) in cases where* [the record] of an inmate ... received from another correctional facility ... raises a reasonable question as to whether he presently is ready to adhere to the department's rules and policies." 7 N.Y.C.R.R. § 301.3. As the plaintiff's initial pleadings were unclear as to the nature of his confinement, I dismissed his complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(d).

The plaintiff subsequently filed an amended complaint which can fairly be read as alleging, among other claims, that the defendants wrongfully placed him in keeplock without issuing a misbehavior report or conducting a disciplinary hearing. Particularly, the plaintiff alleges that he was placed in keeplock at Elmira from August 28, 1988 until September 4, 1988, and that a disciplinary hearing on the underlying charge did not occur until September 8, 1988. The plaintiff also alleges that he was confined for six more days at Southport from October 31, 1988 to November 5, 1988, and that the disciplinary hearing there did not take place until nine days after his release. According to his complaint, plaintiff was not given any written notification of the reasons supporting his keeplock confinement prior to the commencement of the hearings at either facility.

The plaintiff now moves for summary judgment on the issue of his allegedly un-

---

**1.** I do not attempt to decide at this time whether these regulations create a liberty interest in remaining free from detention admission. I re-

serve any ruling on this question until such future time as it is more squarely presented to this Court.

constitutional confinement. In support of his motion, the plaintiff has submitted a personal affidavit, copies of grievances and letters he filed with correctional authorities, as well as a copy of a letter from defendant Thomas A. Coughlin dated September 29, 1988. In that letter, defendant Coughlin acknowledges that the plaintiff was "inappropriate[ly]" confined at Elmira "without a misbehavior report being submitted." Although plaintiff's summary judgment motion was returnable on June 22, 1989, the defendants have failed to file any responsive papers.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure allows a trial court to grant summary judgment if the record shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of initially showing that there are no genuine disputes as to material facts in the case, and any inferences drawn from the evidence proffered must be viewed in the light most favorable to the party opposing summary judgment. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir.1986). However, where the movant has made the requisite showing, the party opposing summary judgment may "not rest upon the mere allegations or denials ... [in its] pleading[s]," but must set forth, by affidavits or otherwise, specific facts demonstrating the existence of genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Sterling Nat'l Bank & Trust of New York v. Federated Department Stores, Inc.*, 612 F.Supp. 144, 146 (S.D.N.Y.1985). The defendants here have failed to file any papers in response to the plaintiff's motion and, accordingly, the facts as alleged by the plaintiff will be accepted as true. I turn now to the question of whether plaintiff's allegations of improper confinement in keeplock without a disciplinary hearing or the filing of a misbehavior report raise an actionable due process claim.

### Due Process Claim

To sustain a claim under the Due Process Clause, the plaintiff must demonstrate that the state action in question infringed upon a protected liberty interest. These liberty interests originate from one of two sources—the Due Process Clause itself and the laws of the states. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *Meachum v. Fano*, 427 U.S. 215, 223–227, 96 S.Ct. 2532, 2537–2540, 49 L.Ed.2d 451 (1976). It is by now well settled that inmates such as the plaintiff here have no inherent Fourteenth Amendment liberty interest in remaining free from the restraints accompanying "keeplock" where such confinement is imposed for administrative rather than punitive reasons. *Hewitt*, 459 U.S. at 468, 103 S.Ct. at 869; *LeFevre*, at 40. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). The plaintiff may nonetheless raise a viable due process claim if he can demonstrate that "state law has created a liberty interest in remaining free from the restraints imposed." *LeFevre*, at 40 (citing *Hewitt*, 459 U.S. at 469, 103 S.Ct. at 870).

The state creates a protected liberty interest for its inmates whenever it places "substantive limitations on official discretion," *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), as a means of insuring "against [the] deprivation of [a prisoner's] substantive rights," *id.* at 250–51, 103 S.Ct. at 1748–49. Where the state uses "particularized standards or criteria [to] guide ... [its] decisionmakers," *id.* at 249, 103 S.Ct. at 1747 (quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)), a "liberty inter-

est is created which may not be deprived without due process." *LeFevre,* at 40–41.

In its recent decision in *Gittens v. LeFevre,* the Second Circuit held that New York law creates a liberty interest in remaining free from keeplock "by using mandatory language and [by] requiring specific substantive predicates" prior to its imposition. *LeFevre,* at 40; *see also Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871–72. In that case, the plaintiff, Darius Gittens, had been wrongfully served with a misbehavior report and placed in keeplock pending a disciplinary hearing. Although he subsequently complained to correction officers and attempted to contact the prison superintendent, Gittens was "told that the review officer continued to approve his confinement and that he would be released only after a ... hearing on the underlying charge." *LeFevre,* at 40. As permitted by New York regulations, Gittens was not allowed a formal opportunity to present his views until the commencement of his disciplinary hearing seven days later. *See* 7 N.Y.C.R.R. § 251–5.1.

After carefully reviewing New York's regulatory scheme for keeplock, the Second Circuit concluded that the procedural protections afforded Gittens violated his right to due process because they did not allow him an adequate opportunity to challenge his confinement within a reasonable time of its imposition. The Court noted that minimal due process requires that inmates subject to such confinement receive at least " 'some notice of the charges against ... [them] and an opportunity to present ... [their] views to the prison official charged with deciding whether to transfer ... [them] to administrative segregation.' " (quoting *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 873); *see also Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Relying on the Supreme Court's decision in *Hewitt,* the Second Circuit ultimately held that "[t]his due process requirement may be satisfied by 'an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation.' " *LeFevre,* at 40 (quoting *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871).

■ Here, the defendants' failure to provide a disciplinary hearing during the course of plaintiff's eight day confinement at Elmira, or during the course of his six day confinement at Southport, clearly denied him his due process right to be heard at "a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *LeFevre,* at 41. The defendants do not allege, nor are there any apparent circumstances justifying the postponement of the plaintiff's hearing for the time period in question. Absent such a showing, the delay here is "unreasonable" for purposes of the due process clause.

The defendants' additional failure to submit a misbehavior report rendered their due process violation an even more egregious one because it effectively denied the plaintiff any protection against wrongful confinement. Under New York law, none of the procedural safeguards accorded inmates confined in keeplock become available until such a report is first filed. For example, the regulatorily mandated daily review of an inmate's keeplock status, and the period within which a disciplinary hearing must commence are both predicated upon the writing and filing of a misbehavior report with the prison review officer and Superintendent. *See* 7 N.Y.C.R.R. §§ 251–5.1(a), 251–1.6(e), and 251–2.2; *see also LeFevre,* at 41, 42 n. 1. Given the nature of this regulatory scheme, the defendants' actions inexcusably denied plaintiff the opportunity to be heard for an "indefinite period of time." *Id.*[2]

---

**2.** The plaintiff also claims that he was unconstitutionally confined for five days following his disciplinary hearing on September 8, 1988. The plaintiff, however, has failed to raise this issue in his supporting papers. Accordingly, his motion for summary judgment on this claim is denied. *Celotex Corp.,* 477 U.S. at 322–324, 106 S.Ct. at 2552–2553.

## 810

### Qualified Immunity

Unlike the Second Circuit in *LeFevre*, however, I find that the defendants here are not entitled to qualified immunity. Such immunity arises only where (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; or (2) "it was not clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987); *see also Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989).

In *LeFevre*, the Second Circuit determined that while inmates had a clearly established right to be heard within a reasonable time of confinement, the "outer boundary" of that reasonableness standard was as yet unsettled at the time of Gitten's confinement. Accordingly, the court found it "objectively reasonable" for the defendants to have believed that a disciplinary hearing within seven days complied with minimal due process standards. *LeFevre*, at 42–43.

■ While the defendants' may have reasonably believed that confinement for six to eight days without a disciplinary hearing did not violate due process, I find their failure to file a misbehavior report at any point during plaintiff's 14 days in keeplock clearly defied well-delineated boundaries of official discretion so as to subject them to liability under § 1983. For example, under § 251–1.6(e), an employee who places an inmate in keeplock must "report such fact, in writing, to the Superintendent as soon as possible, but in any event before going off duty." Section 251–2.2(b) further provides that a "review officer shall review such reports and ... refer ... [them] to the appropriate disciplinary body for action" in accordance with the appropriate guidelines. More importantly, § 251–2.2(d) provides that "[t]he review officer shall review the status of each inmate keeplocked pursuant to a misbehavior report under review, and may order the release of an inmate who is no longer a threat to the

safety and security of the facility or to himself." In light of the clarity of these regulations and the procedural significance of filing a predicate misbehavior report, I find the defendants' failure to file such a report at any point during the plaintiff's 14 day confinement inexcusable. Accordingly, the plaintiff is granted summary judgment on the issue of liability. The parties are directed to submit proof on the question of damages arising out of plaintiff's 14 days of wrongful confinement.

ALL OF THE ABOVE IS SO ORDERED.