### Marvin H. SCHAURER, Plaintiff,

v.

### Walter FOGG, Philip Coombe, Jr. and Louis Virelli, Defendants.

### No. 83–CV–1240 (NPM).

United States District Court, N.D. New York.

Jan. 11, 1995.

Marvin H. Schaurer, Lanesboro, PA, pro se.

Steven H. Schwartz, Asst. Atty. Gen., Office of Atty. Gen., State of N.Y., Dept. of Law, Albany, NY, for defendants.

## OPINION AND ORDER

BAER, District Judge.

Chief Judge Thomas J. McAvoy of the United States District Court for the North-

ern District of New York transferred this dispositive motion (and nine similar motions) to me, by order dated November 5, 1994, due to the backlog caused by a number of vacancies in his district.

Plaintiff *pro se*, Marvin H. Schaurer ("Schaurer"), a former New York State prisoner, brought this suit in 1983 in the Northern District of New York, for declaratory and injunctive relief, and damages arising from the alleged deprivation of his civil rights pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1984, and 1985, and Amendments Nos. 1, 5, 9, and 14 to the United States Constitution. Defendants (individually and in their official capacities) are Louis Virelli, a correctional counselor, Philip Coombe, Jr. and Walter Fogg, superintendents, all at the Eastern New York Correctional Facility while Schaurer was incarcerated there (collectively "Defendants"). Schaurer claims that Defendants conspired to remove his son's name from his approved correspondence and visitors list and thereby deprived him of a meaningful relationship with his son, which he claims led to the "illegal" adoption of his son by his former wife's husband. Defendants moved for summary judgment on January 20, 1993, pursuant to Federal Rule of Civil Procedure 56 on the basis of (1) *respondeat superior;* (2) mootness; (3) *res judicata* and collateral estoppel; (4) lack of specificity in pleading civil rights violations and conspiracy; and (5) qualified immunity. For the reasons that follow I grant summary judgment based on mootness and qualified immunity without reaching the other theories.

## Standard for Summary Judgment Motions

 Federal Rule of Civil Procedure 56(c) requires me to grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive de-

termination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The disputed issues of fact must be "material to the outcome of the litigation," *id.* at 11, and must be backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* With respect to materiality, "substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## Factual Background

The facts are largely undisputed. Schaurer was convicted of first degree burglary and sentenced in February 1971 to a term of one to 25 years in prison. Affidavit of Sharon D. Young sworn to on January 13, 1993 ¶ 2 ("Young Aff."). At the time, Schaurer and his wife Sharon Schaurer (now Sharon D. Young, "Sharon") had a 15–month old son named Russell. *Id.* Sharon took Russell to visit his father in prison on occasion but stopped doing so when Russell was 2 years old because Russell started to enjoy going to Attica prison, and referred to it as "daddy's big house." *Id.* at ¶ 4. Sharon told Schaurer that she thought he and Attica would be a bad influence on Russell. *Id.*

In 1974, Schaurer and Sharon divorced and Sharon received custody of Russell. Young Aff. at ¶ 5. Schaurer was paroled in May 1975, but was again convicted of burglary and sentenced to 12.5 to 25 years in prison in February 1977. At no time during his initial parole, nor since his release in the late 1980's, has Schaurer corresponded or met with Russell. Sharon prevented Schaurer from seeing him. *Id.* at 11–13.

In 1981, Sharon's new husband Joseph Q. Young adopted Russell without notice to Schaurer. In 1983, Schaurer learned of the adoption and moved to vacate it in Steuben County Family Court. In an Order and a Decision dated April 11, 1986, Judge Henry J. Scudder denied the motion concluding that the adoption was in Russell's best interest, and that Schaurer's failure to have a meaningful relationship with his child resulted from Schaurer's own actions that led to his incarceration, as well as Sharon's decision not to permit Russell to maintain a relationship with his father. Exhibit A to Defendants' Motion for Summary Judgment ("Def. Mot."). Judge Scudder also concluded that New York law did not require Schaurer to have received notice and an opportunity to be heard before his son's adoption. *Id.*

In 1983 Schaurer also sued the State of New York in the Court of Claims asserting that the Department of Correctional Services ("the Department") failed to put his infant son's name on his approved correspondence and visitors list at Eastern Correctional Facility. On January 27, 1984, Judge Edward M. Murray granted the State's motion to dismiss Schaurer's claim as barred by the statute of limitations. Def. Mot. Exhibit B. In dictum referring to an affidavit from the Department regarding the rules governing visitors lists, Judge Murray wrote: "The rule that [the mother's] consent is required to have the infant added to the visitors list appears reasonable." *Id.* at 2.

## Discussion

### (1) *MOOTNESS*

■ Defendants assert that Schaurer's claims for declaratory and injunctive relief are moot because Schaurer is no longer incarcerated. Schaurer seeks preliminary injunctions (1) restraining Defendants from re-moving the names of other family members from his correspondence and visitors list, and (2) requiring Defendants to replace his son's name on those lists. "In order for a federal court to exercise its judicial power, an actual case or controversy must exist at each stage of review and not only at the time the complaint is filed." *Mawhinney v. Henderson,* 542 F.2d 1, 2 (2d Cir.1976) citing *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974). Schaurer could not possibly benefit from an injunction since he is no longer incarcerated and does not have a visitors list from which minor children could be excluded even if he had alleged that he currently has minor children. After a prisoner has been released, his request for an injunction restraining prison officials from violating his civil rights is moot. *Mawhinney,* 542 F.2d at 2. Schaurer's argument that the issues presented are still "live" because he can be imprisoned for violation of his parole is unpersuasive. By Schaurer's logic anyone would have standing to sue for an injunction against prison conditions because they might someday be incarcerated. Therefore, Schaurer's claims for injunctive relief are dismissed for mootness.

■ Schaurer also seeks a "declaratory judgment which sets forth the rights of the parties herein in relation to the removal of approved correspondents and visitors from lists maintained by the Department . . . without a formal or informal hearing. . . ." Amended Complaint, July 10, 1985, at 7. As Schaurer is no longer incarcerated, his request for declaratory relief is moot. *Preiser v. Newkirk,* 422 U.S. 395, 401–04, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir.1986). The facts alleged by Schaurer do not "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser,* 422 U.S. at 402, 95 S.Ct. at 2334. Therefore, Schaurer's claims for declaratory relief are dismissed for mootness as well.

### (2) *QUALIFIED IMMUNITY*

■ Defendants further argue that they are protected from Schaurer's various claims for damages by the doctrine of qualified immunity. Government officials performing

**32**

discretionary functions are protected from civil liability "insofar as their conduct does not violate statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). The unlawfulness of the defendant's action must have been "sufficiently clear" under preexisting law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Defendants claim that even if they did remove Russell Schaurer's name from the visitation and correspondence lists, they did not violate a clearly established right. The parties have not cited any authority under New York or Federal law giving inmates an absolute right to receive correspondence from or have visits with persons outside the prison generally, let alone from minor children against the wishes of their custodial parent. While the right to receive visitors and correspondence is sometimes afforded to prisoners, it can be limited. Schaurer has not shown that he had a "clearly established" right of which a "reasonable person would have known" to have his infant son included on his visitors and correspondence lists. Here, it is undisputed that Sharon Young did not want her son Russell to have any contact with Schaurer. She may also have asked the prison authorities to remove Russell's name from Schaurer's correspondence and visitors lists.

### Conclusion

There being no triable issues of material fact, Defendants' motion for summary judgment is granted and Schaurer's complaint is dismissed with prejudice.

**SO ORDERED**