**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

RAYMOND ANTHONY LEWIS,

      Plaintiff - Appellant,

v.

JERRY CLARK, Natrona County
Sheriff's Department Deputy, in his
individual and official capacities;
UNKNOWN NAMED DEPUTY,
Working Control Tower Two, Natrona
County Detention Center, on August 7,
2013, at 10:00 p.m., in his individual and
official capacities; FORTY-FIVE (45)
UNKNOWN NAMED DEPUTIES,
Working at Natrona County Detention
Center from July 2013 to August 2013, in
their individual and official capacities;
FIFTEEN (15) UNKNOWN NAMED
LAWYERS, at Natrona County
Attorney's Office, in their individual and
official capacities,

      Defendants - Appellees.

No. 14-8013
(D.C. No. 2:13-CV-00209-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

_____

    \* After examining Appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal.  *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may

Continued . . .

_____

Before **HARTZ**, **McKAY**, and **MATHESON,** Circuit Judges.

_____

Raymond Anthony Lewis, a federal pre-trial detainee housed in a Wyoming detention facility, filed a pro se[1] civil rights action against the facility's head administrator and several other individuals alleging various constitutional violations on behalf of himself and a class of inmates. After dismissing Mr. Lewis's first complaint and granting leave to amend, the district court concluded Mr. Lewis's second complaint failed to state a claim upon which relief may be granted because he could not represent a class of inmates pro se and his individual claims did not plausibly allege any constitutional violations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

_____

be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Lewis is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

## I. BACKGROUND

### A. *Factual Background*[2]

Between May 30 and September 20, 2013, Mr. Lewis was housed in Natrona County Detention Center ("NCDC") in Wyoming while awaiting resolution of a pending federal criminal case. ROA at 418; Aplt. Br. at 3. In late July and early August 2013, Mr. Lewis filed several administrative complaints with NCDC officials regarding the law library's lack of certain materials, NCDC's mail policy for legal materials, and NCDC's bar on inmate-to-inmate correspondence. *See* ROA at 28, 30, 58-63, 86-90, 334, 338-39.[3] He complained the first two deficiencies prevented him from researching his pending federal case and an unrelated pending state case in Colorado. He complained the bar on inmate-to-inmate correspondence prevented him from communicating with his son, who is incarcerated elsewhere.

Around 10:00 p.m. on August 7, 2013, Mr. Lewis was denied access to the law library despite being next on the list. Speaking through an intercom system, the control tower deputy told Mr. Lewis he did not need to use the library because he had an attorney. ROA at 52, 236. On September 17, 2013, Mr. Lewis pled guilty to the federal charges against him in his pending case and waived his right to a suppression hearing.

---

[2] "We recite the facts as alleged in Mr. [Lewis's] complaint and in the light most favorable to him." *Cressman v. Thompson*, 719 F.3d 1139, 1141 (10th Cir. 2013).

[3] Mr. Lewis also sent a letter to the Natrona County Attorney's Office complaining about the quality of NCDC's law library. *See* ROA at 69.

Two days later, Mr. Lewis filed the instant suit (discussed below), and on September 20, he was transferred to a new facility in Platte County, Wyoming, with better library resources.

## B. *Procedural Background*

### 1. **Dismissal of first complaint**

On September 19, 2013, Mr. Lewis filed a pro se civil rights complaint under 42 U.S.C. §§ 1983, 1985 & 1986 naming Jerry Clark, the Deputy Sheriff of Natrona County Sheriff's Department, Detentions Division ("Lieutenant Clark"), and several other "unknown named" defendants, including deputies working at the detention center and lawyers from the Natrona County Attorney's Office ("NCAO"). Mr. Lewis alleged several constitutional claims, sought to certify a class of inmate detainees, and submitted a list of interrogatories for Lieutenant Clark. Mr. Lewis also sought to proceed *in forma pauperis* ("*ifp*").

On October 16, 2013, the district court denied Mr. Lewis's motion to proceed *ifp* and sua sponte dismissed his first complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (providing that a court "shall dismiss the case" if it determines that the action "fails to state a claim on which relief may be granted"). The court read Mr. Lewis's "rather lengthy complaint" (124 pages) to attempt to assert unconstitutional deprivation of access to the courts regarding his federal criminal trial due to "lack of legal resources at the Natrona County Jail." ROA at 177. Because Mr. Lewis was represented by counsel in his federal criminal case and had recently entered a plea agreement, the

-4-

court concluded his complaint failed to show prejudice, which is required to state a claim based on deprivation of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (requiring that a prisoner demonstrate "the alleged shortcomings in the library" actually hindered his or her "efforts to pursue a legal claim"); ROA at 178 ("[I]t is not clear to the Court, given the status of Plaintiff's pending criminal case, how Plaintiff has been prejudiced in pursuing litigation."). Additionally, the court rejected Mr. Lewis's attempt to bring a class action because he filed "pro se and cannot represent other individuals, since he is not a properly licensed attorney." ROA at 178. It therefore dismissed his complaint without prejudice and granted leave to amend.

2. **Denial of motion for class certification and dismissal of amended complaint**

On October 25, 2013, Mr. Lewis filed an "ex Parte motion to Grant Plaintiff to file under" Federal Rule of Civil Procedure 23. ROA at 185. On November 20, 2013, Mr. Lewis filed a 164-page amended complaint, which alleged numerous facts, advanced eight claims under various constitutional provisions, and included twenty-eight exhibits documenting his administrative grievances. *See* ROA at 198-361 (amended complaint), 205 (arguments), 298-350 (exhibits). The amended complaint alleged several constitutional violations against the following defendants: (1) Lieutenant Clark; (2) an unknown deputy working Control Tower Two at the Natrona County Detention Center on August 7, 2013 at 10:00 p.m.; (3) 45 other unknown deputies working at the NCDC mail room between July and August 2013; and (4) 15 unknown lawyers working at the NCAO. *See* ROA at 198-02, 217, 227, 235, 248, 261, 276, 284, 288. In his prayer for

relief, Mr. Lewis sought declaratory relief, various forms of injunctive relief, and monetary damages, including nominal, compensatory, and punitive damages. *See id.* at 354-58.

On January 8, 2014, the district court denied Mr. Lewis's ex parte motion to certify a class under Rule 23 and dismissed his amended complaint. *See* ROA at 402. The court first rejected Mr. Lewis's motion for Rule 23 certification for the same reasons it rejected his class-based arguments in its original order—he could not represent a class pro se. *Id.* at 403.

The district court then considered the allegations in his amended complaint. The court read his amended complaint to allege several claims: (1) an equal protection violation stemming from the allegation that state prisoners at NCDC have access to state legal materials but federal detainees like Mr. Lewis do not have access to federal legal materials; (2) denial of access to the courts based on his inability to access the law library and the law library's lack of federal materials; (3) denial of access to the law library in retaliation for filing grievances; (4) improper advice given by NCAO lawyers to NCDC officials regarding the legality of NCDC policies; (5) denial of written correspondence with his incarcerated son; (6) "general allegations about prisoner safety" relating to "'snitch' paperwork"; and (7) an unspecified claim that "Defendants returned federal legal materials [Mr. Lewis's] wife sent him for exceeding the 10-page limit." ROA at

404-07.[4]

For various reasons discussed below, the district court dismissed Mr. Lewis's amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a plausible claim upon which relief could be granted. Although the court dismissed his amended complaint without prejudice, it did not grant Mr. Lewis leave to amend his complaint a second time. The court also denied his motions for appointment of counsel and preliminary injunction or temporary restraining order as moot because he had been transferred to a different facility. *See id.* at 408-09. The court did not enter a separate judgment.

3. **Motion to amend or alter the judgment**

On February 10, 2014, Mr. Lewis filed a motion to amend or alter the judgment with a re-amended complaint. ROA at 410. On February 13, the district court denied Mr. Lewis's motion, reasoning that it dismissed Mr. Lewis's amended complaint "without prejudice, for failure to state a claim," and "[t]herefore, this case is closed." *Id.* at 525. The court also explained that "since the matter was dismissed without prejudice, there was no final judgment entered in this case." *Id.* Accordingly, Mr. Lewis's requested remedies were "not available." *Id.* The court nevertheless reviewed Mr. Lewis's re-amended complaint and concluded he raised the same arguments that the court

---

[4] The court found the "remaining claims in [Mr. Lewis's] Amended Complaint . . . either duplicative of the claims previously discussed, or [] lack[ing] sufficient facts for the Court to decipher a claim." *Id.* at 408.

-7-

had already rejected from his first amended complaint. *Id.*

Mr. Lewis filed a notice of appeal on February 24, 2014. On April 5, 2014, Mr. Lewis filed a 35-page brief in this court.[5]

## II. DISCUSSION

On appeal, Mr. Lewis contends the district court erred in refusing to certify his requested class of inmate detainees and dismissing his individual claims. We first discuss (A) our jurisdiction. We then consider Mr. Lewis's arguments regarding (B) his motion to certify a class and (C) his individual claims.

### A. *Jurisdiction*

Before we may consider Mr. Lewis's appeal, we must determine whether we have appellate jurisdiction,[6] which is present only if: (1) the district court's second dismissal without prejudice was a "final" and appealable order under 28 U.S.C. § 1291; and (2) Mr. Lewis's notice of appeal was timely. *See* 28 U.S.C. § 1291 (providing appellate jurisdiction over "appeals from all final decisions of the district courts"); *Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement."). We address these issues in turn.

---

[5] No response brief has been filed. The district court docket does not indicate the defendants have been served any complaint in this case.

[6] "We have routinely recognized our ability to raise the question of appellate jurisdiction *sua sponte*." *Kennedy v. Lubar*, 273 F.3d 1293, 1301 (10th Cir. 2001).

1. **Finality**

In *Moya v. Schollenbarger*, 465 F.3d 444 (10th Cir. 2006), we laid out "the following principles" for "reviewing dismissal orders for finality":

> First, if a district court order expressly and unambiguously dismisses a plaintiff's entire action, that order is final and appealable. Second, where a district court dismissal expressly *denies* the plaintiff leave to amend, or the district court's grounds for dismissal are such that the defect cannot be cured through an amendment to the complaint, that dismissal (even if it is ambiguous or nominally of the complaint) is for practical purposes of the entire action and therefore final. Third, when the dismissal order expressly *grants* the plaintiff leave to amend, that conclusively shows that the district court intended only to dismiss the complaint; the dismissal is thus not a final decision. Finally, in all other cases, we look to the language of the district court's order, the legal basis of the district court's decision, and the circumstances attending dismissal to determine the district court's intent in issuing its order—dismissal of the complaint alone or actual dismissal of plaintiff's entire action. If the effect of the district court order is that the plaintiff is effectively excluded from federal court, then the district court must have intended to dismiss the entire action and our appellate jurisdiction is proper.

*Id.* at 450-51 (citations, quotations, and footnotes omitted).

In making this inquiry, we have said that "a dismissal 'with prejudice' is final and appealable because it means either that the entire action is dismissed or that the complaint is dismissed without leave to amend." *Id.* at 451 n.8. "In contrast, a dismissal 'without prejudice' may or may not be final, depending on if it is intended to dispose of the cause of action." *Id.* (quotations omitted). Importantly, "bare terminology in a district court order is not determinative." *Id.* at 451 n.7.

-9-

The district court in this case did not expressly dismiss Mr. Lewis's entire action (it dismissed his complaint without prejudice), its grounds for dismissal (failure to state a claim) were largely curable, and it did not expressly grant leave to amend. Accordingly, only the final category from *Moya*—determining the court's intent by looking at the language of its order, the legal basis for its decision, and the circumstances attending dismissal—applies here.

These factors indicate the district court intended to dismiss Mr. Lewis's entire action. Although the court dismissed Mr. Lewis's complaint "without prejudice," it did not expressly grant him leave to re-amend his complaint (which it had done in its previous dismissal order). *Compare* ROA at 179 *with id.* at 402, 408-09. Moreover, in denying Mr. Lewis's motion to amend the judgment, the court observed "this case is closed," *id.* at 525, again showing it had intended to dismiss his entire action in its previous order. In light of the foregoing, we conclude the district court intended to dismiss Mr. Lewis's entire action, and its order denying Mr. Lewis's motion for certification and dismissing his amended complaint without prejudice is therefore final and appealable under 28 U.S.C. § 1291.

2. **Timeliness**

Mr. Lewis filed his notice of appeal on February 24, 2014, which was 47 days after the district court dismissed his amended complaint. Normally such a delay would be untimely. *See* Fed. R. App. P. 4(a)(1) (notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from"). But the

-10-

district court failed to enter the required separate document along with its dismissal order. *See* Fed. R. Civ. P. 58(a) (requiring that "[e]very judgment" "be set out in a separate document" in all but five exceptions not relevant here). As a result, judgment was not entered in Mr. Lewis's case until 150 days after the dismissal order's entry in the docket. *See* Fed. R. App. P. 4(a)(7)(A) (defining entry of judgment for purposes of Rule 4(a)—if a separate document is required by Federal Rule of Civil Procedure 58(a)—as the "earlier of" when "the judgment or order is set forth on a separate document" or "150 days have run from the entry in the civil docket").

Because the district court never set forth the judgment on a separate document and Mr. Lewis filed his notice of appeal before 150 days had run from the entry of the order on the civil docket, his appeal is timely. *See* Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *id.* 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a) does not affect the validity of an appeal from that judgment or order."); *Constien v. United States*, 628 F.3d 1207, 1212 (10th Cir. 2010) ("[U]nder Appellate Rule 4(a)(7)([B]), the appellant can always decide to waive the separate document requirement and choose to appeal prior to the running of the 150-day cap." (quotations omitted)). We therefore may consider Mr. Lewis's appeal.

## B. *Class Certification*

The district court concluded Mr. Lewis could not represent a class under Federal

Rule of Civil Procedure 23 because he was "pro se and cannot represent other individuals, since he is not a properly licensed attorney." ROA at 178; *see also id.* at 403 (incorporating explanation from its earlier order to deny Mr. Lewis's motion for Rule 23 Certification). Mr. Lewis asks us to reverse this decision.

"Whether the district court applied the correct legal standard in its decision to grant or deny class certification is reviewed de novo." *Trevizo v. Adams*, 455 F.3d 1155, 1160-61 (10th Cir. 2006) (quotations omitted). "[W]hen the district court has applied the proper standard in deciding whether to certify a class," however, "we may reverse that decision only for an abuse of discretion." *Id.* at 1161 (quotations omitted).

A court may not certify a class unless it determines "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "When the court reviews the quality of the representation under Rule 23(a)(4), it will inquire not only into the character and quality of the named representative party, but also it will consider the quality and experience of the attorneys for the class." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1769.1 (3d ed. 2005) (footnote omitted). In *Fymbo v. State Farm Fire and Casualty Co.*, 213 F.3d 1320 (10th Cir. 2000), we concluded that a "litigant may bring his own claims to federal court without counsel, but not the claims of others" because "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'" *Id.* at 1321 (quoting *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also* 7A Wright & Miller, Federal Practice and Procedure: Civil § 1769.1 (citing cases for rule

-12-

that "class representatives cannot appear pro se").

Here, because Mr. Lewis is proceeding pro se, we conclude the district court applied the proper legal standard and did not abuse its discretion in ruling he cannot adequately represent a class. We therefore affirm the district court's denial of Mr. Lewis's motion to certify.

## C. *Individual Claims*

We now consider Mr. Lewis's individual claims. Because Mr. Lewis appeals from a dismissal of his complaint under *ifp* statute § 1915(e)(2)(B)(ii), we review his dismissal as we would a dismissal under Fed. R. Civ. P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("We apply the same standard of review for dismissals under § 1915(e)(2)(B)(ii) that we employ for Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim.").

Our review is de novo. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). To avoid dismissal, the "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face,'" not merely possible or conceivable. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's use of "mere labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not suffice," and the complaint's "factual allegations [must] plausibly suggest the defendant is liable." *Id.* at 1190-91 (quotations omitted).

Mr. Lewis advances several arguments on appeal regarding his individual claims. Like the district court, we read his complaint to allege (1) an equal protection violation;

-13-

(2) denial of access to the courts; (3) unlawful retaliation; (4) unconstitutional

policymaking by the attorneys at the NCAO; and (5) an unlawful NCDC policy barring

inmate-to-inmate family correspondence.  We also read Mr. Lewis's complaint to allege

(6) several claims under the First and Fourteenth Amendments concerning his access to

the law library and NCDC's 10-page limit on incoming mailed printed materials.[7]  We

address these claims in turn.[8]

1.  **Equal protection**

Mr. Lewis's amended complaint alleges he has been denied equal protection

because, as a federal inmate detainee housed at NCDC, he lacked access to federal legal

materials whereas NCDC's state inmates had access to state legal materials.  *See* ROA at

217, 222.  The district court rejected this claim because Mr. Lewis is "not being treated

---

[7] Unlike the district court, *see supra* at 6, we do not perceive Mr. Lewis's "general allegations about prisoner safety" and "'snitch' paperwork," ROA at 405, to form a freestanding claim.  We instead read these allegations regarding NCDC's internal 20-page copy policy and its resulting "snitch" paperwork to support his argument that the "'logical connection between [the NCDC's policy barring inmate-to-inmate correspondence] and the asserted goal [of safety] is so remote as to render the policy arbitrary and irrational.'"  ROA at 283 (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)); *see also id.* at 212, 233-34, 272 (making same argument with respect to NCDC's 10-page limit on incoming mailed printed materials).

[8] Mr. Lewis alleges he filed multiple grievances regarding each of these claims and attached copies to his complaints.  *See* ROA at 219, 232, 236, 263-64, 282.  We do not discuss whether Mr. Lewis exhausted his administrative remedies, as required under the Prison Litigation and Reform Act, 42 U.S.C. § 1997e *et seq.*, because exhaustion is an affirmative defense, not a pleading requirement.  *See Jones v. Bock*, 549 U.S. 199, 212-17 (2007).

-14-

differently; he is just not being provided additional legal materials that the state prisoners are also not receiving." *Id.* at 404. We affirm because even if Mr. Lewis was similarly situated to state prisoners and can show disparate impact, he has not alleged discriminatory purpose.

The Equal Protection Clause of the Fourteenth Amendment forbids states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In assessing an equal protection claim, we usually ask two questions. "First, we ask whether the challenged state action intentionally discriminates between groups of persons." *SECYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) (citing *Washington v. Davis*, 426 U.S. 229, 240 (1976)). This "requires that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment of a particular class of persons." *Id.* (quotations and alterations omitted). "Second, and after an act of intentional discrimination against a particular group is identified either by presumption or evidence and inference, courts ask whether the state's intentional decision to discriminate can be justified by reference to some upright government purpose." *Id.* at 686.

Mr. Lewis's claim fails at the first step. His complaint does not allege that a distinction between state and federal inmates "appears on the face of" any NCDC policy or action regarding its law library materials. *See id.* at 685 ("When a distinction between

-15-

groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required."). Because "the [policy] under review is generally applicable to all persons, no presumption of intentional discrimination arises; proof is required." *Id.* Mr. Lewis's complaint, however, fails to allege NCDC officials curated the law library's collection with discriminatory purpose towards federal detainees. Because "purposeful discrimination is an essential element of an equal protection claim," *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 n.1 (10th Cir. 1990), Mr. Lewis's equal protection claim must fail. We therefore affirm the district court's dismissal of this claim.

2. **Access to the courts**

Mr. Lewis's amended complaint alleges he was deprived of access to the courts based on deficient legal materials or lack of assistance available at NCDC's law library. We read his complaint as alleging that these shortcomings made it so (1) he was unable to determine whether to plead guilty to a pending federal charge even though he was represented by counsel and was unable to assist his appointed counsel in preparing his defense on this charge; (2) he was unable to contest a pending, unrepresented, out-of-state case in Arapahoe, Colorado; and (3) he was unable to challenge the conditions of his confinement. *See* ROA at 227, 229-30, 251.

The district court rejected Mr. Lewis's argument that he was denied access to the courts as to both his pending federal case and his Colorado case, and did not address his remaining contentions. The court rejected Mr. Lewis's claim that NCDC's lack of

-16-

federal legal materials denied him access to the courts because Mr. Lewis had "an appointed attorney in his federal criminal proceeding" and "cannot show that he has been prejudiced in pursuing his litigation" because he "pled guilty" and "was recently sentenced." ROA at 405, 407. As for Mr. Lewis's assertion that he lacked access to materials for a "traffic related matter in Arapahoe County, Colorado," the district court concluded Mr. Lewis did in fact have access to that court because "he states that he filed a writ of habeas corpus with the court in Arapahoe County." *Id.* at 406. Moreover, the district court reasoned, Mr. Lewis's complaint failed to "provide any information on how a lack of federal legal materials denied him access to a state court in Colorado." *Id.*[9]

  a.  *Legal background*

Prisoners and pretrial detainees have a clearly established "constitutional right of access to the courts." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (quotations omitted); *see also Love v. Summit Cnty.*, 776 F.2d 908, 912-13 (10th Cir. 1985) ("This plaintiff, a pretrial detainee, also has a constitutional right to adequate, effective and meaningful access to the courts to vindicate his fundamental constitutional rights.").

Although providing access to a law library is one means of effectuating the right of access to the courts, the Constitution does not guarantee prisoners "an abstract,

---

[9] The district court did not consider Mr. Lewis's claim that he was unable to challenge his conditions of confinement.

-17-

freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (quotations omitted); *see also Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided." (citation omitted)). "It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) (citing *Casey*, 518 U.S. at 350-51).

"To state a claim for denial of such a right, [Mr. Lewis] must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Trujillo*, 465 F.3d at 1226 (quotations omitted); *see also Casey*, 518 U.S. at 351 (requiring that a prisoner demonstrate "the alleged shortcomings in the library" actually hindered his or her "efforts to pursue a legal claim"). That is, Mr. Lewis must show that, by denying him access to the law library or materials, NCDC officials frustrated or impeded his ability to file a non-frivolous direct appeal from his conviction, a habeas corpus petition, or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Casey*, 518 U.S. at 351, 354-55 (quotations omitted). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and

-18-

incarceration." *Id.* at 355.

b. *Analysis*

Mr. Lewis argues the district court erred in concluding he failed to state a claim based on lack of access to the courts. We disagree.

i. Mr. Lewis's federal criminal case

Mr. Lewis contends the lack of federal materials at NCDC hindered his ability to decide whether to accept the federal government's time-sensitive plea agreement and prevented him from assisting his counsel in his pending federal criminal case. *See* ROA at 253, 256, 260.

As noted above, "providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library." *Taylor*, 183 F.3d at 1204. That principle applies to Mr. Lewis's demand to obtain federal materials within a law library because he had appointed counsel in his federal criminal case. In his criminal case, Mr. Lewis's counsel assessed the Fourth Amendment exclusionary rule's good-faith exception's applicability to Mr. Lewis's case. *See* Aplt. Br. at 15; ROA at 252-53. He advised Mr. Lewis to take a plea deal under which he would receive a 10-year sentence instead of a 20-year sentence in exchange for waiving his right to a suppression hearing. *See id.* Mr. Lewis followed this advice. *See id.* Moreover, although the Sixth Amendment provides a right to counsel or a right to proceed pro se, it does not provide a right to assist appointed counsel with legal research. Mr. Lewis therefore cannot state a

claim related to his federal criminal case based on the lack of federal materials in the law library.[10]

### ii. Mr. Lewis's Colorado case

Mr. Lewis argues the lack of Colorado state law materials in the NCDC law library hindered his ability to contest a pending (and unrepresented) traffic charge in Arapahoe County, Colorado. ROA at 227, 229.

Mr. Lewis's amended complaint fails to plausibly allege an access to the courts claim on this score because it fails to demonstrate a lack of access or resulting prejudice. His amended complaint alleges that appointed counsel in his federal case was not obligated to help him with this unrelated matter and "never entertained" his request to do so. *Id.* at 229. Mr. Lewis nevertheless filed a writ of habeas corpus with the Arapahoe County courts on June 18, 2013, in what he terms a "feeble attempt to access the courts." ROA at 233. He did not receive a response. *Id.* Mr. Lewis's amended complaint further

---

[10] To the extent Mr. Lewis argues counsel was ineffective, *see* Aplt. Br. at 15, we reject this claim for two reasons. First, a traditional claim of ineffective assistance is not cognizable under 42 U.S.C. § 1983 because his attorney is not a state actor. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Second, prevailing on such a claim would call into question the validity of his conviction, which is generally not permissible to do through a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997) ("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994))).

-20-

alleges his $10,000 bond related to that pending charge increased to $20,000 when he missed his June 25, 2013 court date and the bail bond agent did not receive proof of his incarceration in NCDC. *Id.* Mr. Lewis fails to allege, however, precisely how these consequences can be attributed to deficiencies in NCDC's legal facilities. He acknowledges he filed a writ of habeas corpus with the Arapahoe County courts regarding the Colorado charge before he was due to appear in court, and he fails to articulate how alleged deficiencies in NCDC's law library contributed either to the lack of response from the Colorado court or the increase in his bail bond.

As a result, his amended complaint fails to state an access to courts claim upon which relief may be granted.

### iii. Mr. Lewis's civil rights case

Finally, Mr. Lewis asserts the deficiencies in the law library and the legal assistance program at NCDC hindered his ability to bring a civil rights challenge in this case to his conditions of confinement. ROA at 230, 259.

His allegations are unclear, but in any event, he cannot show that he was prejudiced in pursuing his civil legal claims. Although the district court dismissed his first complaint, it did so without prejudice and expressly granted leave to amend. From his new detention facility in Platte County, Wyoming, Mr. Lewis filed a lengthy amended complaint that cites and discusses numerous federal legal authorities. *See generally id.* at 198-361. Whereas Mr. Lewis alleged he "could not litigate effectively" in NCDC because he "had no federal materials while he was in Natrona's facility," he expressly

-21-

alleged his new facility in Platte County provided "[t]he bare bone essentials" to "[l]itigate with meaning and effect." ROA at 258-59 (brackets omitted); *see also id.* at 259 ("This facility provides that (Platte County).").

Given that Mr. Lewis has failed to allege that any deficiency in federal materials or the legal assistance program at NCDC "prejudiced" his civil rights action, *Trujillo*, 465 F.3d at 1226 (quotations omitted), we conclude he fails to state a claim on this front.

\* \* \*

Accordingly, Mr. Lewis's allegations in his amended complaint regarding his right of access to the courts fail to state a claim upon which relief may be granted. We affirm the district court's ruling on this claim.

3. **Retaliation**

In his amended complaint, Mr. Lewis alleges that an unknown deputy operating control tower number two at 10:00 p.m. on August 7, 2013, refused him entry to the law library (even though he was next on the list) in retaliation for Mr. Lewis's use of the administrative grievance process. *See* ROA at 235-36. The district court rejected this claim in only two sentences: "[Mr. Lewis] attempts to couch these claims as retaliation claims, but he fails to assert the injury from the alleged retaliation. [Mr. Lewis] also fails to state sufficient facts for a claim of retaliation." *Id.* at 406-07. On appeal, Mr. Lewis argues the district court erred in dismissing this claim. We agree.

a. *Legal background*

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations omitted). To establish a First Amendment retaliation claim, a plaintiff must demonstrate three elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

"[I]t is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson*, 149 F.3d at 1144; *see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987). "[A]n inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson*, 149 F.3d at 1144. Thus, we have determined that a prisoner claiming retaliation "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.* "An inmate claiming retaliation must 'allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* (quoting and emphasizing *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)).

-23-

b. *Analysis*

Here, Mr. Lewis's complaint alleges he was denied access to the law library in retaliation for exercising his First Amendment right to file administrative grievances with NCDC officials. *See* ROA at 240-41. Because Mr. Lewis alleges he filed numerous administrative grievances, he has adequately alleged the first element—that he was engaged in protected activity. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (reversing district court's dismissal of prisoner's claim that he was "denied particular job assignments or was transferred from one job to another in retaliation for filing administrative grievances").

Mr. Lewis also adequately alleges an adverse action—denial of access to the law library—that is sufficiently serious to "chill a person of ordinary firmness from continuing to engage in that activity." *Shero*, 510 F.3d at 1203. Although we have not decided this exact issue, we have concluded that confiscating an inmate's legal papers in retaliation for engaging in protected conduct could deter a person of "ordinary firmness" from engaging in that conduct. *See Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996) (reversing grant of summary judgment to defendants on inmate's claim that guards conducted harassing cell searches, seized legal materials, refused to provide inmate with hygiene items, and transferred inmate to segregation in retaliation for suit against prison officials); *Green v. Johnson*, 977 F.2d 1383, 1389-91 (10th Cir. 1992) (holding that inmate's allegation that guards destroyed his legal materials in retaliation for his filing of suits and grievances stated a cognizable First Amendment claim); *see also Zimmerman v.*

-24-

*Tribble*, 226 F.3d 568, 573-74 (7th Cir. 2000) (reversing dismissal of claim that prison law librarian repeatedly denied prisoner access to the prison law library in retaliation for protected conduct).

Finally, Mr. Lewis satisfies the third element because the facts alleged in his amended complaint give rise to a reasonable inference that he would have been able to use the law library "but for" the deputy's alleged retaliatory motive. Mr. Lewis alleges he filed numerous administrative grievances during late July 2013 and early August 2013, including one on August 6, 2013. *See* ROA at 28, 30, 58-63, 86-90. According to Mr. Lewis, these grievances are completed on carbon paper so as to produce several copies. The white copy goes in the inmate's file, the yellow copy goes to the security lieutenant, the pink copy goes to the inmate along with officials' responses, and the gold copy is kept by the inmate. *Id.* at 240. "Upon lodging a request or grievance," Mr. Lewis alleges, "it must be handed to the 'floor deputy,'" who gives the inmate the "gold copy" and retains the rest. *Id.* at 241. The forms (along with officials' responses) "are then taken to the [control] Tower and sit [there] until they are distributed accordingly." *Id.* Mr. Lewis alleges these forms "are usually read" by employees working in the tower, and "because these forms are read it caused retaliation" by the "Unknown Named deputy" working in the tower around 10 p.m. on August 7, 2013. *Id.*

To enter the law library, Mr. Lewis alleges inmates must "[b]uzz" one of two control towers from "intercom systems located in each individual cell[]" and be "placed

on the list" on a "first come first serve basis." ROA at 238-39.[11]  Mr. Lewis alleges he successfully used this process on August 2, 2013, to enter the law library on August 4, 2013. *Id.* at 239.  On August 5th and 6th, Mr. Lewis used this process again to try to enter the law library and was "confirmed next on the List." *Id.* at 240.  Despite Mr. Lewis's status as next on the list to gain access to the library, the control tower deputy refused to grant him entry when he buzzed the tower on August 7, 2013.  The deputy informed Mr. Lewis that he had an attorney and did not "need to go to the Law Library." *Id.* at 242.  Shortly thereafter, the deputy called over the loud speaker in a portion of the jail asking another inmate if he wished to use the law library. *See id.*  After that inmate replied "yes," he "buzzed the Tower" and told the deputy to "let [Mr.] Lewis" and his cellmate go instead "because I am tired." *Id.*  The deputy in the control tower refused, stating "there were others ahead of them on the list." *Id.*

Although the deputy's proffered reason for denying Mr. Lewis access was that Mr. Lewis had a lawyer and therefore did not need to use the library, the chronology of events alleged in the complaint—the timing of Mr. Lewis's grievances, the way grievance forms are processed through the tower, and that Mr. Lewis had been confirmed next on the list—plausibly support Mr. Lewis's contention that the deputy would not have refused him access "but for" his protected activity. *See Gee v. Pacheco*, 627 F.3d

[11] As a result, inmates do not interact face-to-face with the deputies working in the towers and do not know their names.

1178, 1189 (10th Cir. 2010) (reversing district court's dismissal of prisoner's retaliatory transfer claim where the complaint alleged "that Defendants were aware of his protected activity, that his protected activity complained of Defendants' actions, and that the transfer was in close temporal proximity to the protected activity"). "The[se] allegations may be improbable, but they are not implausible." *Id.*

Accordingly, Mr. Lewis's amended complaint states a claim of retaliation upon which relief may be granted. The district court erred in concluding otherwise, and we therefore reverse on this claim.

4. **Claim against unknown NCAO attorneys**

In his amended complaint, Mr. Lewis alleges 15 unknown NCAO attorneys conspired with Lieutenant Clark to create and maintain constitutionally inadequate policies. *See* ROA at 261-63, 265. He alleges these attorneys "knew what they were doing" when they "deemed NCDC Law Library adequate" in the face of established laws to the contrary. *Id.* The district court rejected this claim because it was "not a proper claim." ROA at 407. We agree.

Mr. Lewis's basis to recover against these attorneys is not clear. Because the attorneys did not directly participate in any violations alleged by Mr. Lewis and merely advised NCDC about the constitutionality of its policies, we read this claim to be one of supervisory liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) ("[Section] 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the

continued operation of a policy" that deprives the plaintiff "of any rights secured by the Constitution." (quotations omitted)).

"Section 1983, however, does not authorize liability under a theory of respondeat superior." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotations omitted). "Rather, a plaintiff must satisfy three elements to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind," which "can be no less than the *mens rea* required of the subordinates to commit the underlying constitutional violation." *Id.* (quotations omitted).

Mr. Lewis's allegations are nearly incomprehensible, much less plausible. Even assuming Mr. Lewis has plausibly alleged the attorneys' personal involvement by advising Lieutenant Clark about the constitutionality of the policies, he fails to satisfy the causation and state of mind elements.

To satisfy causation, Mr. Lewis must allege the defendants' actions "caused the constitutional violation by setting in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.* (quotations omitted). He has failed to raise allegations to that effect.

As to state of mind, he does not advance any factual allegations to support his conclusory statements that the unknown attorneys possessed a culpable state of mind. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[R]espondent's complaint does not

contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.").

Mr. Lewis's complaint therefore fails to state a claim for supervisory liability upon which relief may be granted. We affirm the district court's ruling on this claim.

5. **Inmate-to-inmate correspondence restriction**

Mr. Lewis's amended complaint alleges NCDC's absolute bar on inmate-to-inmate correspondence is unconstitutional because it does not allow an exception for incarcerated family members to communicate and is not rationally related to a legitimate penological interest. *See* ROA at 280, 283. He alleges that 45 unknown deputies working in the NCDC mailroom violated his First Amendment rights to freedom of speech and association, as well as his Fourteenth Amendment equal protection rights, when they refused to deliver (pursuant to this policy) correspondence from his son, who is incarcerated elsewhere. ROA at 271-73, 276, 278.[12]

The district court rejected this claim after concluding Mr. Lewis's requested remedies were unavailable under the PLRA and due to his recent transfer to a new facility with a different correspondence policy. *See* ROA at 407-08. As to Mr. Lewis's request for "monetary damages, including punitive damages," the district court

---

[12] Mr. Lewis acknowledges that "additional facts" adduced through discovery will "remov[e] a substantial amount of Defendants" from this claim and "plac[e] the rightful responsible name on face." ROA at 273-74.

concluded, "those damages are not available," *id.* at 408, under the PLRA, which requires

"a prior showing of physical injury," *id.* (quoting 42 U.S.C. § 1997e(e)). As to Mr.

Lewis's request for declaratory and injunctive relief, Mr. Lewis "is no longer housed at

NCDC" and those claims were therefore "moot." *Id.*; *see also Green v. Branson*, 108

F.3d 1296, 1300 (10th Cir. 1997) (collecting cases finding prisoner's claims for

declaratory and injunctive relief moot in light of release from confinement).

On appeal, Mr. Lewis argues the district court erred. We agree in part. Although

the district court correctly observed that Mr. Lewis may not obtain compensatory

damages or prospective relief on this claim, it did not consider his claim for nominal

damages and failed to recognize that punitive damages may be available in cases without

physical injury.

Unlike Mr. Lewis's request for prospective relief,[13] his request for damages was

---

[13] Mr. Lewis contends his transfer should not moot his claims for prospective relief because otherwise the "continual violations" at NCDC will "perpetually evade and escape Judicial review." Aplt. Br. at 33. We disagree.

"[O]utside the class-action context," we have said this "narrow" exception to the mootness doctrine requires a showing of two elements: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Jordan v. Sosa*, 654 F.3d 1012, 1034-35 (10th Cir. 2011) (quoting and altering *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam))).

Because Mr. Lewis fails to demonstrate a reasonable expectation that he will be housed in NCDC again now that he is in federal custody, we cannot exempt his claims for prospective relief from a mootness determination. Nor does Mr. Lewis plausibly

Continued . . .

not mooted by his transfer to a new facility. *See O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1216 (10th Cir. 1990) ("[B]y definition claims for past damages cannot be deemed moot. There is no question that the nominal damages sought in this case were past damages not affected by any changes in the Code." (quotations omitted)); *see also Beyah v. Coughlin*, 789 F.2d 986, 988-89 (2d Cir. 1986) (observing that although the fact that the prisoner plaintiff was no longer incarcerated at prison with the allegedly unconstitutional practice "may well moot [his] claims for declaratory and injunctive relief," his request for punitive damages "were not mooted" by the transfer).

And although § 1997e(e) bars compensatory damages in the absence of physical injury, it does not bar nominal or punitive damages in such cases. *See Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) ("[W]e now hold that section 1997e(e) does not bar recovery of nominal damages for violations of prisoners' rights."); *id.* at 881 ("We believe that the salient fact is that Congress simply did not choose to provide a restriction [in § 1997e(e)] on punitive damages."). In Mr. Lewis's prayer for relief, he expressly requested both nominal and punitive damages. ROA at 353, 357-58.

Mr. Lewis makes several arguments for why this policy is not rationally related to a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

_____

allege that NCDC "officials' transfer decisions were in any way a subterfuge" deserving of the "voluntary cessation" exception to the mootness doctrine. *Id.* at 1037.

reasonably related to legitimate penological interests."). We express no view on this question,[14] and we remand to the district court to resolve this claim on the merits in the first instance. *See Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) (remanding retaliatory transfer claim because the district court "did not engage in the analysis set forth in *Turner*," prison officials had "articulated no reasons for the transfer" of the plaintiff, and it was "by no means apparent that [the plaintiff's] claim [was] frivolous").

6. **Additional claims**

Mr. Lewis's amended complaint alleges First and Fourteenth Amendment claims concerning his access to the law library and the jail's 10-page limit on incoming mailed printed materials. *See* ROA at 218, 288-93. He argues these restrictions violated his right to free speech and free expression and that NCDC's failure to abide by its own regulations deprived him of both a property and liberty interest without adequate process. *See* Aplt. Br. at 17-19. The district court recognized some of Mr. Lewis's allegations regarding the 10-page limit but concluded he "does not assert what fundamental right is violated by this prohibition." ROA at 405-06. We disagree.

_____

[14] In *Turner*, after engaging in a four-part balancing test, the Supreme Court concluded Missouri's general prohibition on inmate-to-inmate correspondence "does not unconstitutionally abridge the First Amendment rights of prison inmates." 482 U.S. at 93. The *Turner* Court did not, however, consider how the rights of related prisoners might alter that calculus because the regulation at issue "permit[ted] such correspondence 'with immediate family members who are inmates in other correctional institutions.'" *Id.* at 81 (quoting regulation); *see also Gee*, 627 F.3d at 1188 ("[A]ccess is essential to families and friends of prisoners who seek to sustain relationships with them." (quoting and altering *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989))).

Mr. Lewis's amended complaint alleges the lack of "written or posted" notice about the jail's 10-page limit deprived him of a "property interest" without "[d]ue process." *Id.* at 218; *see also id.* at 212, 288. The complaint further alleges the jail violated his rights to "free speech/free association" when it returned a letter and "federal legal research materials" sent from his wife because of this policy. *Id.* at 211-12, 288. Finally, his complaint asserts he had a "[p]rotected liberty interest" in the law library because of the "mandatory language" in the inmate handbook. *Id.* at 218.

Because the district court did not address these claims, we leave them for the court on remand. *See Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially.").

## III. CONCLUSION

In sum, we affirm the district court's denial of Mr. Lewis's ex parte motion to certify a class under Federal Rule of Civil Procedure 23.

As to Mr. Lewis's individual claims, we affirm the district court's dismissal of his equal protection, access to courts, and supervisory liability claims as to Lieutenant Clark and the NCAO attorneys. We reverse the district court's dismissal of his retaliation claim as to the "Unknown Named Deputy" working in the control tower on August 7, 2013. We affirm in part and reverse in part the district court's dismissal of his inmate-to-inmate correspondence claims as to Lieutenant Clark and the "45 Unknown Named Deputies" working in the mail room. We remand Mr. Lewis's remaining claims under the First and

Fourteenth Amendments regarding his access to the law library and NCDC's 10-page limit on incoming mailed printed materials.[15]

Finally, we grant Mr. Lewis's motion to proceed *in forma pauperis* and remind him that he must continue making partial payments until the filing fees he owes are paid in full.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

[15] Mr. Lewis sued the defendants in their official and individual capacities. We leave to the district court on remand whether the official capacity claims survive municipal liability concerns or, to the extent the remaining defendants are state employees, Eleventh Amendment concerns.

In dismissing Mr. Lewis's complaint, the district court ruled that his motion for appointment of counsel was moot. Mr. Lewis challenges that decision on appeal. We decline to address this issue, although Mr. Lewis may renew the motion in the district court on remand.